Our final case today is No. 519-0105, Beelman Truck Co. v. Rebsamen Insurance, Inc. Counsel ready? You may proceed. Good afternoon, and may it please the Court, I am Andrew Locke, and I represent plaintiffs' appellants of Beelman Truck Co. and the other Beelman entities. The issue before the Court today is simply the question of whether the Beelman entity's period contained in Section 214.4, and whether Beelman met those requirements when, one, this isn't a dispute involving the sale or procurement of insurance, and therefore the statute doesn't apply, and two, Beelman did not receive a request from the National Union and its insurer to ever arbitrate the underlying dispute that date back to 2007 until 2015. And on that basis, we believe the Circuit Court erred in granting the defendants' motion to dismiss based solely on those grounds. Our argument is really two-pronged here. The first prong is the applicability of Section 214.4. That section reads that it applies to insurance producers and any legal theory brought against them, quote, concerning the sale, placement, procurement, renewal, cancellation of, or  That's not what the case we have here today is. This case, Beelman employed Revzeman and then the subsequent region's defendants as its insurance brokers. They went out and obtained a policy of insurance, and after the first insurance policy went into effect, Revzeman employee John West may sign a letter of understanding with Beelman. And in that letter of understanding, it represented that, among various things, that Beelman wouldn't be obligated to pay adjusted loss, allocated loss adjustment expenses, A-L-L-E, A-L-A-E. These are things like attorney's fees, deposition transcript costs, and the like. And like I said, that these LOUs were entered after the policies had already went into effect. They were separate agreements between Revzeman and regions with Beelman. They didn't involve National Union whatsoever. They weren't part of the policies. National Union never signed it. The policies were already in effect. And in fact, the first paragraph of the LOUs says that these agreements were made to eliminate misunderstandings or ambiguities in the policies. So they're not even part of the policies themselves. They're a separate side agreement. We believe that the application of Section 214.4 to the LOUs would go beyond the intent of the legislature in that it would apply to the sale or placement of insurance because the insurance is already in place. This is a separate agreement. We believe that the truly applicable statute of limitations would be the catch-all five-year provision in 205 or the three-year, as well as the three-year provision of the Illinois Consumer Fraud and Deceptive Practices Act because we also brought counts under that act. The A-P-L-E states that your argument as to the LOU is forfeited because you didn't raise it at the trial court. What's your response? Our response to that, Your Honor, is that that's the argument that we've raised this entire time. We've always based all of our claims on the LOUs. We attached the LOUs to our complaint. In all the briefings that we've done in this case, we've said that this isn't part of the that we had with Webbs Amendment and Regents. Another point is that I wouldn't know if a two-year statute doesn't apply to what statute does. We raised counts of common law fraud, negligent misrepresentation. Is that a five-year statute? Yes, I believe those fall out. How are you within the five years? And that's moving on to the second prong, which is a good bridge over, that whichever statute of limitations periods apply, that we have to determine when the clock started. We don't believe the clock started until March 31st of 2015, which is when National Union, the insurer at the time, sent Beelman a demand to submit to arbitration. Because what happened was, because of the contents of the LOUs and what it said about who was obligated to pay ALIE, when Beelman got an invoice, it crossed those expenses off and it didn't pay that portion, and it paid the rest, and that went to National Union. Under the payment agreement with National Union, if there is a payment dispute, then National Union was obligated to bring those claims to arbitration within 60 days of the dispute, and that never happened, at least until 2015. So we believe that Beelman didn't know of this breach or its injury until it got to arbitration demand. What about the client's mitigation back in 2009, by sending an email to defendants, basically conceding that they were injured at that point? Well, and that's a difficult call, Your Honor, because he said that, I believe what he said exactly in the emails was that, I'll have my attorney draw up a lawsuit. But the problem there is that, assuming Beelman did file a lawsuit at that point in time, it's hard for me to understand how that claim wouldn't have been dismissed pursuant to Section 215, because there was no damages at that point. National Union had not done anything. So it's not just a part of being damages being speculative, it's whether there will ever even be damages. Hadn't they been billed? Sorry? Hadn't they been billed? They had been billed and they paid everything other than the ALAD and sent those to National Union never made a formal demand for what was owed until March 2015. How can they not know about it if they don't, if they get a bill, how can they say they didn't know about it? Because we relied on representations made to us by our broker that we didn't have to pay these expenses. So they're getting a bill, but somebody else is telling the broker that they don't know? Right. The LOUs with the broker said that all ALAD costs would be borne by the insurer and we relied on that and not paying those portions of the invoices. And we believe that this position is supported by the case law, notably the first case law point two is that of Broadmax where the statute of limitations period was triggered when the insurer's claim was denied and the insurer requested a declaratory judgment of no coverage. What about the Krupp case? The Krupp case, the first issue with the, I don't believe the Krupp case completely wipes out the discovery rule with respect to these sorts of claims against insurance producers. They left open situations where I think we fit in, where policy holders couldn't be expected to know everything simply by reading their policy. And in the case they specifically mentioned reasonable reliance on the representative, on the representations of an agent and they cited the Grossi case, which is out of the Supreme Court of Indiana. And that is a very similar case to ours where it's a similar statute, same two year time frame limitation. And they said that the reasonable reliance on an agent's representation can override a duty to read policy. The only reason it didn't work in Grossi is because that particular agent didn't make a representation about current coverage. He only made a representation about what may be applicable in the future. In our case, all these representations that were made were about the coverages that were in effect between Beelman and National Union. Similarly, in the Michonne case, the statute of limitations period was triggered when there was an issue letter, a letter issued that obligated Indiana to pay an amount over its policy limits. And what the court found there was that their statute of limitations period had run out because the insurer would have known that there was an issue because a claimant had filed. So similar to those cases, which I still think established something that wasn't wiped out by crop, was that there has to be some affirmative act, I believe, that effectively put them on notice. And that we didn't get that until arbitration demand of March 2015. And that once that arbitration demand was made, I believe what happened shows the good faith basis of Beelman to deal with this problem. What happened was we ended up going to New York for the arbitration. We filed a third party petition to bring the brokers into the arbitration in New York. But because they weren't signatories to the actual insurance policy, that was denied. And once that happened is when we filed a complaint in St. Clair County making these allegations that we're here for today. So if your honors don't have any further questions, I'll save the remainder of my time for rebuttal. All right. Thank you. Good afternoon, your honors, and may it please the court. My name is Jacqueline Graves, and I'm here representing the defendants in this case. Rebsamon Insurance is now Regions Insurance, so I often, I may refer to them as Regions rather than Rebsamon, but that's who I'm referring to today. And their insurance broker that worked for them, John West. Now, in this case, the trial court did the only appropriate and rational thing. They dismissed this case because it is barred by the applicable statute of limitations. Moreover, your honors, when you look at the record today, and as your honors have already pointed out when questioning Mr. Lequette, the record shows that even if a three-year or a five-year statute of limitations applies, those, the claims are still barred under those statute of limitations because the very latest possible date that plaintiffs could have known about the accrual of their claims was in 2009, as your honor pointed out, when Sam Beelman, the owner of Plaintiff's Companies, threatened to sue the defendants for the exact claims that are at issue in this case. Plaintiff makes a number of arguments why they think the two-year statute of limitations should not apply, but 2009, your honors, was seven years before the lawsuit was filed. Seven years is greater than the two-year statute of limitations, it's greater than three-year statute of limitations, and it's greater than five-year statute of limitations. So regardless of which statute of limitations you want to apply here today, plaintiff's claims are barred. Let's talk about that two-year statute of limitations, though, for insurance producers. First, the question that has been raised is whether or not the claims fall within the statute. They say plaintiffs have argued that they do not fall within the statute because the statute of limitations applies to all claims against insurance producers, quote, concerning the sale, placement, procurement, renewal, cancellation of, failure to procure, or failure to procure in the insurance policy. The important term there, your honors, is concerning. Just last month, the Northern District of Illinois interpreted this exact word in a case called Pape v. Brayton. That citation is 2019 Westlaw 4750036, and it was decided September 30, 2009. They looked at the word concerning, and in that case, the plaintiffs were arguing that the agreement at issue was a financial agreement associated with a life insurance policy. The plaintiffs made the exact argument being brought here, that that financial agreement, like the LOU's here, was not part of the insurance policy. The court rejected that, saying the word concerns and the statute itself, the language by its plain and ordinary meaning, encompasses all suits emerging from the sale of insurance policies. Similarly, the First District said in Indiana Insurance Company v. Michon and Michon, quote, the statute as written is unequivocal and subject to only one reasonable interpretation, that all causes of action brought by any person or entity under any theory against an insurance producer shall be brought within the two years of the date the cause of action accrues. We don't have to just look at the law, though, your honors. We can look at the allegations within the complaint. For example, at paragraphs 31 and 61, those are pages C11 and C17 of the record, plaintiff asserts, quote, that the LOU's were, quote, intended by the parties thereto to apply to all policy programs purchased by Beelman. Throughout the complaint and the citations to the record around pages 7 and 8 of defendants' brief, they make similar allegations. They say that the defendants sold the policies, that the defendants made the misrepresentations while procuring, binding, and placing the coverage, that they owed plaintiffs' duties in the procurement of insurance services, and that the misrepresentations were made to, quote, plaintiffs into purchasing the policies. There's no doubt, your honor, that the claims at issue in today's case are claims that fall within the two-year statute of limitations in that they concern the sale, placement, procurement, or the failure to procure an insurance policy. Second, and the more important issue I think that is concerning the Court here today, is when the cause of action accrued. For tort cases arising out of an agreement like this one, a cause of action accrues not when damages are ascertainable, but rather when the breach occurs. The Illinois Supreme Court said in Croft that in this context, the breach occurs when the insurance producer provides a policy that does not include the terms that the customer thought that they were buying. Here, the customer, the plaintiffs, thought that they were getting an insurance policy that provided that they did not have to pay the ALAEs. We read the LOU and policies together. Unfortunately, National Union disagreed, and National Union said, plaintiffs, you do owe the ALAEs. And in fact, they told plaintiffs they owed the ALAEs as soon as these policies went into effect in 2007, when invoice after invoice was sent to the plaintiffs containing the ALAE expenses. What date was the first invoice? I don't have the date of the first invoice in front of me, your honor, but the policy went into effect on June 30, 2007. That was the first date of the 2007 policy. Croft says that the duty is on the policyholder to read the policy when they get it. That is correct, your honor. And in that case, as I said, the claim accrues when the insurance producer provides a policy that does not conform to the customer's specifications. However, your honor, I don't think that we have to narrow it down to one specific date on when the claim accrued here, because we know for certain that the claim accrued when especially no later than 2009. The question for the discovery rule is when the claimant knew or reasonably should have known of the injury and that the injury was wrongfully caused. It's not a question as to damages. It's a question as to when they were aware of the breach. When were they aware of the breach? Well, certainly there is no question. It was by October 13, 2009. In the record, at C-425 and C-426, there's an email exchange between Liam Murphy of Regions Bank or of Regions Insurance and Sam Beelman, the owner of the plaintiffs. In that case, Liam Murphy of Regions says to Mr. Beelman, I know we have not spoken, but I wanted to reach out to maybe solve an issue for all concerned. Obviously, the issue of the ALAE on the claims that was in the letter of standing has become a problem. He goes on, I would like to offer a compromise if you would consider it. I have authority that if we could be rehired to procure your insurance, that we would settle the claim at the claim in an amount to be determined. The next email is from Sam Beelman back saying, the offer is what your firm should have done when you still had our business. And then it goes on, we will have our attorney prepare the lawsuit if payment is not received by Friday, October 16. Sam Beelman was making a statement that he was going to be suing the defendants, the exact same lawsuit that was not brought until 2016, back on October 13, 2009. And the question of payment, the question of damages, and whether or not they could be ascertained, in fact, they could have been ascertained. Look at the invoices that contained the ALAE expenses on them that were not being paid. Sam Beelman knew that that's the amount that he wanted the defendants to pay. Sam Beelman knew that that's the amount that he expected to be received by October 16, 2009, or a lawsuit would be filed. Amounts weren't paid, but unfortunately a lawsuit wasn't filed either. And that means that the statute of limitations ran at the latest on that date of October 13, 2009. I just want to go on just to press the point a little further of this email exchange. Liam Murphy then responded to Mr. Beelman, we do not believe we have any liability in this issue, but I wanted to try to solve an issue without the need for litigation. Sam Beelman responds, Liam, the representations were made in writing, the LOUs, and verbally by John West, your agent. How can you claim you have no liability? There's no question that the plaintiffs in this case were aware of their alleged injury, the alleged breach, and the fact that they had damages no later than October 13, 2009. Again, October 13, 2009 was more than seven years prior to the date that the case was filed here. Again, no matter which statute of limitations you apply, it's greater than two years, which is the statute of limitations for insurance producers. It's greater than three years, which is the amount under the Consumer Fraud Protection Act, and it's greater than five years for tort claims. Moreover, your honors, I think that this email answers all of the issues that were raised by plaintiffs' counsel today, but I do want to address two of the cases that he mentioned. One is the Broadnax case, and one is the Kroc case. Your honors, the Broadnax case was, in fact, superseded by the Kroc case. The Broadnax case said that in waiting until the ‑‑ by allowing them to wait until the denial by the insurance company, they were relying on law that was no longer valid. That is, in 1997, the Illinois State Legislature amended the law to say that there are no fiduciary duties for insurance brokers or for agents. Given that, the court said in Kroc, the case from last year from the Illinois Supreme Court, they said actually insurance brokers and agents don't have that higher standard. It's on the person, it's on the insurer to read their policy and understand whether or not it applies. Now, I understand in the briefing that plaintiffs have made an argument that where, and then you cite to the Gross case, he just cited to the Gross case, where there is a contradictory term or where, for example, there may be misrepresentations by an agent, the question that's been raised is that they should have been able to rely on those representations until 2015 when they received the arbitration demand. Your Honors, it was not until 2015 that there was a dispute over these ALAEs and plaintiffs knew it. If you look at the record, there are multiple citations or there are multiple places where there were, there was correspondence between the insurance company and plaintiffs, where the insurance company said in 2009, again in 2013, that they expected them to pay the ALAEs and if they did not do so, this is the record at page C-421, that they would seek further collection action. Please contact me to discuss payment. The payments were never made. The fact that plaintiffs didn't pay them and the fact that the arbitration was not demanded in 2015 does not prevent the claim or the breach or the fact that they knew of the claim and the breach way back in 2009 from taking place. In fact, Your Honors, in plaintiffs' own briefing, they make representations that they were aware of this dispute. On page 8 of the, on page, let's see, at the principal brief at page 6, they, plaintiffs write, quote, a disagreement arose between National Union and plaintiffs as to whether plaintiffs owed the ALAE paid out by National Union on those claims. It goes on on that same page. Quote, despite the alleged payment issue, National Union never sought to arbitrate the issue and continued to renew its policies with plaintiffs, end quote. Plaintiffs' own briefing admits that there was a dispute. Plaintiffs knew that there was a dispute way back in 2007, way back in 2007 when they started getting the invoices with the ALAEs and that they weren't paid. Also within the record, we included requests for admission. Those are at C-406 where plaintiffs admit that they received invoices from National Union containing the ALAEs back in 2007 and 2008. Your Honors, there's no question that the trial court did the right thing in this case. They saw no other way than to grant the motion to dismiss for failure to bring these claims within the statute of limitations. If your Honors have no other questions. Thank you. Thank you. Thank you. A few points on reply. I may take some of these a little out of order. But the first case that counsel mentioned, the paid case that was recently decided out of the Northern District of Illinois Federal Court. While it did come to the opposite of what I'm arguing here today on whether 214.4 applies to this case, what PAPE also went on to do was it denied the insurer's motion to dismiss based on the statute of limitations overall, even though it found that it applied because the plaintiffs in that case had alleged that the statute of limitations period was told due to fraudulent concealment of evidence of the claim. Similarly, those defendants argued, well, you had reasons to know that there were these problems. But what the court decided was that based on the federal motion to dismiss standards, that this wasn't proper for a motion to dismiss and it was premature because there are issues of fact. Similar here, the Illinois motion to dismiss standard would be for statute of limitations granted only when there's no genuine issue of material fact that the statute of limitations had been passed up. In this case, we have the LOUs that were signed by John West and the region's defendants. We have alleged that we relied on those agreements and refused to pay National Union, even though there were rumblings of you owe this, you owe that, they're on the invoices. National Union did nothing, absolutely nothing to assert its rights under the policies. It waited from 2007 to 2015 to do anything about it that it should have done within 60 days of the first invoice not being paid in 2007. For all we know, that they could have accepted our interpretation of it as right. And if we did bring a case by 2009, it too probably would have been deemed premature because National Union hadn't done anything. It's a different statute of limitations to collect a premium, isn't it? Well, I believe so, but it would still fall under the contract statute of limitations for 10 years in Illinois. But that particular agreement was under New York law. And then with respect to the Indiana case, I don't know if it's stated that the statute is as unequivocal as it sounds. In that case, the issue is fairly more straightforward where a building burned down and it was when the claim came in. And so there was no issue about whether this dispute was about the sale or procurement of a policy. So the court didn't even analyze that part of the language. Now, with respect to Broadmax, yes, it was superseded by CROC. Admittedly, there's no getting around that. But I still believe that Broadmax, when you pair it with Michonne, is what they do is that they provide a basis where you can find the trigger date for the statute of limitations. Both are based on the denial of coverage by the insurer. In this case, I believe that that is analogous to us receiving the arbitration demand from National Union. And with respect to many of these communications, I don't believe that any of them were as sufficient as the arbitration notice to put Beelman on as notice as the arbitration demand. Because when you read Michonne and Broadmax, I feel like there needs to be some affirmative action that needs to be done, whether it's a denial of coverage or submitting a letter or anything like that. And these communications simply weren't it. In the Dan Freeman communication, she had just said, I saw this on the bill there. I talked to AIG, which is the parent company of the two named defendants, and they said there wasn't anything discussing what that. And then Beelman responded that these we didn't pay based on the LOUs at the time. And she said the one entered into by John West. And Beelman replied, yes. Thank you. Thank you, counsel, for your arguments. The court will take this matter under advisement. We have a decision in due course. The court stands adjourned for today.